## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 20-23921-CV-SCOLA/TORRES

BARBARA DE LA CARIDAD FALCON,

        Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of
the Social Security Administration,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on the parties' cross motions for summary judgment filed by Barbara De La Caridad Falcon ("Plaintiff"), [D.E. 19], and Kilolo Kijakazi, Acting Commissioner of the Social Security Administration ("Defendant" or "Commissioner"), [D.E. 20].  Under the limited standard of review that governs this case, the Court finds that the motions are ripe for disposition and that substantial evidence supports the ALJ's determination.[1]  For the reasons stated below, Plaintiff's motion for summary judgment [D.E. 19] should be **DENIED**, Defendant's motion for summary judgment [D.E. 20] should be **GRANTED**, and the decision of the Administrative Law Judge ("ALJ") should be **AFFIRMED**.

---

[1]     On September 24, 2020, the Honorable Robert N. Scola, Jr. referred all dispositive matters in this case to the undersigned Magistrate Judge for a Report and Recommendation.  [D.E. 2].

## I.      FACTUAL AND PROCEDURAL BACKGROUND

On May 1, 2018, Plaintiff applied for disability insurance benefits, alleging a disability onset date of April 17, 2018. The Commissioner denied Plaintiff's applications at the initial and reconsideration levels.  Plaintiff then requested a hearing before an ALJ that took place on December 17, 2019.  After considering the record and the testimony of a vocational expert ("VE"), ALJ James Cole Cartledge issued an unfavorable decision on January 14, 2020.

At step one of the five-step sequential process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 17, 2018.  The ALJ found at step two that Plaintiff had the severe impairments of spondylosis of the lumbosacral spine, essential hypertension, diabetes mellitus, anxiety, depressive, bipolar, obsessive-compulsive, and related disorders.  The ALJ then determined at step three that her severe impairments did not meet any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Prior to moving to step four, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform:

> [M]edium work as defined in 20 CFR 404.1567(c) except the claimant could have only occasionally (occasionally being defined as cumulatively 1/3 or less of an 8 hour workday) lift and/or carry (including upward pulling) 50 pounds; frequently (frequently being defined as cumulatively between 1/3 and 2/3 of an 8 hour workday) lift and/or carry (including upward pulling) 25 pounds; stand and/or walk (with normal breaks) for a total of 6 hours in an 8 hour workday; sit (with normal breaks) for a total of 6 hours in an 8 hour workday; with no limits regarding pushing and/or pulling (including operation of hand and/or foot controls) except as otherwise shown for lift and/or carry in this residual functional capacity. The claimant could frequently climb ramps/stairs, climb ladders/ropes/scaffolds; balance, stoop (i.e., bending at the waste); kneel;

2

crouch (i.e., bending at the knees); and crawl. The claimant must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc.; and hazards (e.g. machinery, heights, etc.). The claimant is limited to unskilled Specific Vocational Preparation (SVP) levels 1 and 2 occupations of simple, routine, and repetitive tasks limited to occasional interaction with the public, co-workers, and supervisors, and limited to occasional work-setting changes. The claimant is also limited to General Educational Development (GED) levels 1 and 2 as defined in the Dictionary of Occupational Titles (DOT).

[D.E. 17 at 25-26]. The ALJ then proceeded to step four and determined that Plaintiff could not perform her past relevant work as a customer service representative, billing clerk, or front desk clerk.

At step five, the ALJ determined that, in light of Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (e.g., laundry laborer, industrial cleaner, hand packager). Accordingly, the ALJ held that Plaintiff has not been under a disability, as defined in the Social Security Act, since April 17, 2018, through the date of his decision.

On September 17, 2020, the Appeals Council denied Plaintiff's request to review the ALJ's decision. Plaintiff then filed this action seeking judicial review of the administrative proceedings pursuant to 42 U.S.C. § 405(g). Accordingly, this action is now ripe for disposition.

## II.  STANDARD OF REVIEW

Judicial review of an ALJ's final decision is limited to an inquiry into whether there is substantial evidence in the record to support the ALJ's findings, and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971); *Kelley v. Apfel*, 185 F.3d 1211, 1212 (11th Cir. 1999). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing *Richardson*, 402 U.S. at 401); *see also Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996)).

In testing for substantial evidence, a court is not to "reweigh the evidence" or "decide the facts anew." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (citing another case). Instead, so long as an ALJ's findings are supported by substantial evidence, a court must defer to the ALJ's decision even if the evidence may preponderate against it. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004); *see also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's fact findings."); *Miles*, 84 F.3d at 1400; 42 U.S.C. § 405(g). However, no presumption of validity attaches to the Commissioner's conclusions of law. *See Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). A court also reviews an ALJ's decision to determine whether the correct legal standards were applied. *See Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). In this respect, "the ALJ has a basic obligation to develop a full and fair record," as a hearing before an ALJ is not an adversary proceeding. *Id.* (citing another source).

Ultimately, it is the function of the Commissioner to resolve conflicts in the evidence and to assess the credibility of the witnesses. *See Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). It is also the responsibility of the Commissioner to draw inferences from the evidence, and those inferences cannot be overturned if they are supported by substantial evidence. *See Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, a court's responsibility is to ensure that the proper legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

### III.  ANALYSIS OF DISABILITY DETERMINATION

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or is expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant bears the burden of producing evidence that proves her or she meets this statutory definition. "The social security regulations establish a five-step evaluation process, which is used to determine disability for both SSI and DIB claims" and "[t]hese regulations place[] a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Spencer v. Heckler,* 765 F.2d 1090, 1093 (11th Cir. 1985)). The steps are followed in order to determine if the claimant is disabled.

An ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry ends. *See* 20 C.F.R. §

404.1520(b).  In the second step, an ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments.  If an ALJ does not make such a finding, then the inquiry ends.  *See id.* at § 404.1520(c).  At step three, an ALJ compares the claimant's impairments with specific impairments under the regulations that require a finding of disability without further inquiry into the claimant's ability to perform other work.  *See Gibson v. Heckler*, 762 F.2d 1516, 1518 (11th Cir. 1985) ("Certain impairments are so severe either when considered alone or in conjunction with other impairments that, if such impairments are proved, the regulations require a finding of disability without further inquiry into the claimant's ability to work.").  If the claimant's impairment meets or equals a listed impairment, the claimant's disability is presumed, and benefits are awarded.  *See* 20 C.F.R. § 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing past relevant work.  If the claimant cannot perform past relevant work, then a prima facie case of disability is established.  An ALJ assesses a claimant's RFC prior to this stage, based on the other relevant evidence, to determine the extent of a claimant's ability to work despite the alleged impairments. *See id.* at § 416.945(a)(1).  A claimant's RFC is an administrative finding of fact concerning the claimant's maximum remaining capacity to perform work-related physical and mental activities on a regular and continuing basis despite the functional limitations and environmental restrictions imposed by his or her medically determinable impairment(s).

6

When making this finding, an ALJ is required to identify the limitations and/or restrictions imposed by the claimant's impairments and then assess his or her work-related abilities on a function-by-function basis. Only upon the conclusion of this function-by-function analysis may an ALJ express the claimant's RFC in terms of the exertional levels of work (i.e., sedentary, light, medium, heavy, and very heavy).

This leads to step five – the final inquiry – where the burden shifts to the Commissioner to show that there is other work available in the national economy that the claimant can perform based on the claimant's RFC, work experience, education, and age. *See id.* at § 404.1520(e)-(f).

On appeal, Plaintiff asserts that the ALJ's decision must be remanded for two reasons: (1) the ALJ failed to properly evaluate the medical evidence, and (2) the constitutional defect associated with the Commissioner's removal denied her a valid adjudicatory process. We consider each argument in turn.

### A. *The ALJ properly considered the medical evidence.*

Plaintiff argues that the ALJ failed to properly consider the opinions from Plaintiff's treating psychiatrist, Dr. Gamez, and Plaintiff's treating psychologist, Dr. Romero. As an initial matter, the rules for evaluating medical opinions in social security cases have changed. The new regulations apply to claims filed on or after March 27, 2017, stating that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 404.1520c(a). All medical opinions are instead evaluated according to the factors listed in § 404.1520c(c), of which the most important are the supportability

7

and consistency of the medical opinion.  And the Commissioner is not required to articulate how it "considered each medical opinion or prior administrative medical finding from one medical source individually."  § 404.1520c(b)(1).

Supportability refers to the relevance of "the objective medical evidence and supporting explanations presented by a medical source . . . to support his or her" opinion.  § 404.1520c(c)(1).  Consistency looks to whether "the evidence from other medical sources and nonmedical sources in the claim" are consistent with the medical opinion presented.  § 404.1520c(c)(2).  The other factors, for which the ALJ is not required to analyze in detail, concern the medical source's relationship with the claimant, the medical source's specialization, and any "other factors that tend to support or contradict a medical opinion."  *See* §§ 404.1520c(c)(2)-(5); *see also Mudge v. Saul*, 2019 WL 3412616, *4 (E.D. Mo. July 29, 2019) ("Other than articulating his consideration of the supportability and consistency factors, the Commissioner is not required to discuss or explain how he considered any other factor in determining persuasiveness.") (citing 20 C.F.R. § 404.1520c(b)(2)).

Thus, under the revised regulations, the ALJ must articulate how persuasive it finds all the medical opinions in the record, and specifically articulating how it considered the supportability and consistency factors for a medical source's opinion. *See* 20 C.F.R. § 404.1520c(b); *see also Bonilla v. Saul*, No. 19-25323-CIV, 2020 WL 9048787, at *4, n.5 (S.D. Fla. Oct. 23, 2020), *report and recommendation adopted*, No. 19-CV-25323, 2021 WL 1198296 (S.D. Fla. Mar. 30, 2021) ("The new regulations are, in some respects, consistent with prior Eleventh Circuit decisions because an ALJ

8

could always "reject any medical opinion if the evidence supports a contrary finding.") (citing *Wainwright v. Comm'r of Soc. Sec. Admin.*, 2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007)).  If the ALJ finds that two or more medical opinions are equally well-supported and consistent with the record, but not the same, the ALJ must articulate how it considered other persuasive factors.  *See* 20 C.F.R. § 404.1520c(b)(3).

Here, the ALJ was unpersuaded by the opinions of Dr. Gamez and Dr. Romeo with respect to Plaintiff's RFC because their opinions were "inconsistent" with the contemporaneous treatment records.  [D.E. 17 at 29].   By contrast, the ALJ found the opinions of Dr. Walker, Dr. Klein, and Dr. Tessler – the state agency consultants – to be persuasive because he found their opinions to be "consistent" with the evidence in the record.  *Id*. at 28-29.

The ALJ articulated that, with respect to Dr. Gamez and Dr. Romero, their contemporaneous treatment notes indicate that Plaintiff's affect was "appropriate" and "congruent with mood" even though she presented with signs of depression.  *Id*. at 29.   Further, the ALJ found that their treatment notes documented that Plaintiff was fully oriented and repeatedly denied suicidal or homicidal ideations.  *Id*. "Generally, her cognitive functioning, vocabulary, fund of knowledge are intact, age appropriate, and in the normal range; her short and long-term memory were intact, as was [her] ability to abstract and do arithmetic calculations."  *Id*.  "The records also show that her insight into problems was normal and her judgment appears intact."  *Id*.  Because of the foregoing, and because Dr. Romero's notes further indicated that Plaintiff had good communication skills and was able to develop and maintain a

"strong rapport," the ALJ discounted Dr. Gamez's and Dr. Romero's "dire" opinions concerning Plaintiff's ability to work. *Id.* Thus, although the ALJ was expressly cognizant of the evidence in the record that supported the opinions of Dr. Gamez and Dr. Romero, he nevertheless was unpersuaded by these opinions because, on balance, they were not consistent with the entire record.

Instead of recognizing that the ALJ discussed the required factors under § 405.1520c when reaching an unfavorable decision, Plaintiff is essentially asking the Court to replace the ALJ's analysis under the regulations with its own. This we cannot do. *See Crawford*, 363 at 1158-59; *see also Medina v. Saul*, 2020 WL 5628023, at *5 (M.D. Fla. Sept. 21, 2020) (ALJ complied with 20 C.F.R. § 404.1520c by stating, "As the evidence did not support the degree of limitations Dr. Ali placed on the claimant, including her own treatment notes, this opinion was not persuasive."). Remand on this basis is thus not appropriate because the ALJ clearly considered the supportability and consistency of the opinions of Dr. Gamez and Dr. Romero as required under the regulations. The Court's review of the record reveals substantive evidence with which to sustain the ALJ's findings.

**B.** **The constitutional defect concerning the Commissioner's removal does not merit remand.**

Plaintiff also raises a constitutional challenge to undermine the ALJ's disability determination. Plaintiff argues that, because of a separation of powers violation, the Commissioner deprived Plaintiff of a valid administrative adjudicatory process. [D.E. 19 at 6]. Specifically, Plaintiff alleges that "[t]he United States Supreme Court has held that it is unconstitutional for an executive agency to be led

by a single head who serves for a longer term than the President and can only be removed from his position for cause." *Id*. at 5 (citing *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020)).  According to Plaintiff, the "constitutionally invalid structure" of the Consumer Financial Protection Bureau is "identical" to that of the Social Security Administration in that "[t]he Commissioner of SSA is the singular head of the Agency, serves for six years, and cannot be removed by the President except for cause ('neglect of duty or malfeasance in office')." *Id*. at 6 (citing 42 U.S.C. § 902(a)(3)).  Accordingly, Plaintiff maintains that, because the ALJ and the Appeals Council that upheld the ALJ derived their authority from the Commissioner and adjudicated the claim under rules promulgated by the Commissioner, this disability determination is "constitutionally defective" and ought to be remanded.  *Id*. at 5-6 (citing Hearings, Appeals, and Litigation Law Manual (HALLEX) § I-2-0-2(A)).

Although Defendant concedes that 42 U.S.C § 902(a)(3) violates separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without case, *see* Constitutionality of the Comm'r of Soc. Sec.'s Tenure Prot., 2021 WL 2981542, at *1 (O.L.C. July 8, 2021), Defendant insists that this conclusion does not support setting aside and remanding Plaintiff's disability determination.  [D.E. 20 at 8-9].

In particular, Defendant relies on the Supreme Court's recent holding in *Collins v. Yellen*, 141 S. Ct. 1761 (2021), and asserts that this precedent forecloses Plaintiff's arguments.  In *Collins*, the Supreme Court dealt with a similar claim to

the one Plaintiff raises here.  There, plaintiffs alleged that the structure of the Federal Housing Finance Agency (FHFA) was unconstitutional because its sole director was removable by the President only for cause.  The Supreme Court found that the FHFA's removal provision was unconstitutional, but it explained that even where an unconstitutional removal restriction is present, a plaintiff cannot obtain relief without showing that the "unconstitutional provision . . . inflict[ed] compensable harm."  *See Collins*, 141 S. Ct. at 1789; *see also Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1137 (9th Cir. 2021) ("*Collins* is controlling with respect to the remedy for any unconstitutionality in the removal provisions.").

Plaintiff's theory for compensable harm in this case is based on the claim, because the removal provision of 42 U.S.C. § 902(a)(3) is unconstitutional, so too were the Commissioner's actions in his role as the head of the SSA.  This included his specific delegation of authority to the ALJ who decided Plaintiff's claim.  So, Plaintiff concludes, the unconstitutional status of the Commissioner taints the legality of the ALJ's findings and conclusions, which illegality can only be cured by a remand Order.

The Court concludes, however, that this argument has been foreclosed by the Supreme Court.  In *Collins*, the Supreme Court held that an unconstitutional removal provision does not provide a basis to conclude that the agency head subject to the removal provision "lacked the authority to carry out the functions of the office." *Collins*, 141 S. Ct. at 1788.  This conclusion followed from the decision in *Seila Law*, where the Supreme Court also held that an unconstitutional removal provision does not *per se* render the whole underlying act void.  *See Seila Law*, 140 S. Ct. at 2211;

12

*see also Collins*, 141 S. Ct. at 1787 n. 23 ("Settled precedent also confirms that the unlawfulness of the removal provision does not strip the Director of the power to undertake the other responsibilities of his office . . . .").

In making her argument, Plaintiff improperly conflates the rule in *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018), with the decisions in *Seila Law* and *Collins*. The Court in *Lucia* "held that the appropriate remedy for an adjudication tainted with *an appointments violation* is a new hearing before a properly appointed official." *Lucia*, 138 S. Ct. at 2055 (emphasis added). However, neither *Seila Law*, *Collins*, or the case at hand involved issues with the manner of appointment of the Commissioner or the ALJ that denied Plaintiff's claim. *See Collins*, 141 S. Ct. at 1788 (explaining that "All the officers who headed the FHFA during the time in question were properly appointed[,]" whereas *Lucia* "involved a Government actor's exercise of power that the actor did not lawfully possess."). As such, the remedy prescribed by *Lucia* is inapplicable to the facts in our situation.[2]

Instead, relief is available in removal challenges only where the alleged injuries are caused by officials subject to the challenged removal restrictions, and where those restrictions themselves "inflict[ed] compensable harm" upon plaintiffs. *Collins*, 141 S. Ct. at 1789; *see also id*. at 1788 n. 24 ("What we said about standing

---

[2]     Indeed, in response to the Supreme Court's holding in *Lucia*, on July 16, 2018, then Acting Commissioner of the SSA, Nancy Berryhill, ratified the appointments of all ALJs and approved those appointments as her own, "to address any Appointments Clause questions involving SSA claims." *See* Soc. Sec. Admin., EM-180003 REV 2, Important Information Regarding Possible Challenges to the Appointment of Administrative Law Judges in SSA's Administrative Process—UPDATE (2/6/2018).

in *Seila Law* should not be misunderstood as a holding on a party's entitlement to relief based on an unconstitutional removal restriction . . . [and] does not mean that actions taken by such an officer are void ab initio and must be undone.").

Here, however, Plaintiff fails to allege with any level of detail how the removal restrictions of § 902(a)(3) inflicted compensable harm upon her.   Plaintiff notes, for example, that she was harmed because the Commissioner implemented a rule on January 17, 2020, which the ALJ "applied" in her case.  [D.E. 19 at 8].  But the ALJ issued his unfavorable decision *three days before* the rule cited by Plaintiff was implemented.  Accordingly, Plaintiff has alleged no direct action by the former tainted Commissioner himself in her denial of benefits, and no involvement—or even awareness—by the former President in the ALJ's decision.  *Cf. Id.* at 1802 (Kagan, J. concurring) ("[G]iven the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone . . . When an agency decision would not capture a President's attention, his removal authority could not make a difference.").

Accordingly, because Plaintiff fails to show that she suffered compensable harm as a result of the removal restrictions of § 902(a)(3), her motion for summary judgment on the basis of separation of powers should be denied on its merits.  This conclusion finds ample support in recent analogous cases analyzing the same constitutional challenge. *See, e.g., Decker Coal Co.*, 8 F.4th at 1138 ("[T]here is no link between the ALJ's decision awarding benefits and the allegedly unconstitutional removal provisions. And nothing commands us to vacate the decisions below on that

ground."); *Tibbetts v. Comm'r of Soc. Sec.*, Case No. 2:20-CV-872-SPC-MRM, 2021 WL 6297530, at *6 (M.D. Fla. Dec. 21, 2021) (even assuming section 902(a)(3) is unconstitutional, "the removal provision does not necessitate remand or a rehearing of Plaintiff's claim"); *Perez-Kocher v. Comm'r of Soc. Sec.*, Case No. 6:20-CV-2357-GKS-EJK, 2021 WL 6334838, at *4 (M.D. Fla. Nov. 23, 2021) (holding that because plaintiff failed to show that § 902(a)(3) caused compensable harm, the plaintiff had failed to state a claim upon which relief could be granted); *Lisa Y. v. Comm'r of Soc. Sec.*, No. C21-5207-BAT, 2021 WL 5177363, at *7 (W.D. Wash. Nov. 8, 2021) ("Reversal is not mandated under *Seila Law* or *Collins* because § 902(a)(3)'s removal clause is severable, and because there is no possibility § 902(a)(3)'s removal clause harmed Plaintiff."); *White v. Comm'r of Soc. Sec.*, No. 2:20-CV-1695-KJN, 2022 WL 463318, at *6 (E.D. Cal. Feb. 15, 2022) (same); *Rivera-Herrera v. Kijakazi*, No. 1:20-CV-01326-GSA, 2021 WL 5450230, at *8 (E.D. Cal. Nov. 22, 2021) (same); *Amanda B. v. Comm'r of Soc. Sec.*, No. 3:20-CV-00434-BR, 2021 WL 4993944, at *9 (D. Or. Oct. 26, 2021) (same).

## IV.   CONCLUSION

Substantial evidence supports the ALJ's findings as noted in his unfavorable decision.  The ALJ's conclusion applied proper legal standards and any errors therein did not prejudice Plaintiff and were harmless.  And no constitutional challenge merits a remand in this case.  For the foregoing reasons, the undersigned **RECOMMENDS** that Plaintiff's motion for summary judgment [D.E. 19] be **DENIED**, that

Defendant's motion for summary judgment [D.E. 20] be **GRANTED**, and that the decision of the Commissioner be **AFFIRMED**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have ten (10) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge.  Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.  28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Comm'r of Soc. Sec.,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 26th day of August, 2022.

*/s/ Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge